Billie Lou STEPHENS and Montana Bank, a Montana banking corporation, Co-Executors of the Estate of Chris Jensen, Deceased, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. No. 2606.

United States District Court
D. Montana,
Great Falls Division.

July 20, 1967.

Church, Harris, Johnson & Williams, Dale Forbes, Great Falls, Mont., for plaintiffs.

Jerome Hillis, Atty., Dept. of Justice, Washington, D. C., Moody Brickett, U. S. Atty., Butte, Mont., for defendant.

## OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

Plaintiffs, co-executors of the estate of Chris Jensen, deceased, having paid a deficiency in the estate taxes assessed by the Commissioner of Internal Revenue, sue for a refund. The case was submitted for decision upon stipulated facts.

Claims for refund sufficient in form were timely filed. This action was timely filed. Four issues were submitted:

1. *How is the marital deduction to be computed in view of a will; a renunciation of it by the widow, and an agreement which controlled the decree of distribution?*

Chris Jensen died leaving behind him a will, a widow, and a daughter by a previous marriage. The will was admitted to probate. Under its terms the widow was to receive the family home. A trust created for her benefit was to receive certain real estate and one-half of the residue of the estate. The widow was given a general power of appointment over the assets of the trust. At the date of testator's death the widow's interest as provided by the will qualified for the marital deduction.[1]

The widow, after consultation with counsel, and apparently with a callous disregard for estate tax consequences, elected to renounce the will and take her dower in the lands and her share in the personal estate.[2] The renunciation was in statutory form and was filed within the statutory time.[3]

After the renunciation had been filed, the attorney for the executors advised them that he was uncertain of the widow's rights under Montana law and that it might be advantageous to reach an agreement between the widow and the estate. Finally, and again without regard to estate tax consequences, an agreement was reached under which the widow received certain real estate in fee and one-half of the personal property. The probate court was advised of what had been done and a decree of distribution was entered. The probate judge specifically determined the agreement to be a fair and equitable settlement and distributed the estate in accordance with it. The decree of the court was not a declaration of state law as applied to the facts. Basically, it was nothing more than an approval of the agreement which had been reached by the parties. The agreement, however, was a bona fide settlement of a complex legal problem.

The marital deduction was calculated by plaintiffs on the basis of the decree; that is, on the basis of the property actually received by the widow. The Commissioner refused to allow the marital deduction as claimed. It was the Commissioner's position that for estate tax purposes the interest of the widow should be determined on the basis of the rights given her by law upon the renunciation of the will; that under Montana law the widow's dower interest in the lands was a life estate and therefore a terminable, non-qualifying interest under § 2056(b) (1) Int.Rev.Code of 1954.

The defendant supports this position by an argument that the deduction is allowable only as to interests passing from the decedent; that the election to renounce by operation of law occurs on the date of death; hence, as of date of death, the widow had terminable interest in the real estate and that her dealings with the other heirs and the estate amounted to a trade of assets. From this it is urged that the non-terminable

---

1. Int.Rev.Code of 1954 § 2056(a).

2. R.C.M.1947, § 22–107.

3. R.C.M.1947, § 22–108.

interests received by the widow in exchange for her terminable interests passed from the other heirs and not from the decedent.

The core of the defendant's argument is the contention that the marital deduction depends upon a "passing" from the decedent under the provisions of § 2056(e).[4] The defendant urges that under § 2056(e) (3) and Treasury Regulation 20.2056(e)–2 (c)[5] once an election is made the widow's rights under the law fix the marital deduction.

■ The court regards the language of the section and the Treasury regulation as standing for no more than that where the distribution is based upon statutory rights following an election, the marital deduction is then determined on the basis of the quality and quantity of rights actually received by the widow. To base a marital deduction on a mid-probate happening which does not ripen into a real interest is to produce a tax

result unrelated to the economic realities. The court is of the opinion that such a result is compelled neither by the statute nor the decisions. The government considers the widow's rights once the statutory election was made as being finally and completely measured by R.C.M.1947, § 22–107. The election was not necessarily final—possibly it might have been withdrawn as a matter of right[6] or by consent of all of the other heirs. There is likewise the possibility that the widow's life estate would have been converted into the actual cash in hand prior to the distribution of the estate.[7]

It is not at all clear here that the widow did not have rights as an heir in the real estate which the will left to the trust. When she renounced the will, the real estate devised to her went into the residue of the estate. One-half of the residue went to the daughter, but after the widow's renunciation there was no

4. The pertinent subdivisions of § 2056(e) are 1, 2, and 3, reading as follows:
"[A]n interest in property shall be considered as passing from the decedent to any person if and only if—
(1) such interest is bequeathed or devised to such person by the decedent;
(2) such interest is inherited by such person from the decedent;
(3) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent."

5. Section 2056(e) (3) of the Int.Rev.Code of 1954, reads as follows:
"(e) Definition.—For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if—
"(3) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent; * * *"
Treasury Regulation § 20.2056(e)–2 (c) provides:
"(c) *Effect of election by surviving spouse.*
This paragraph contains rules applicable if the surviving spouse may elect between a property interest offered to her under the decedent's will or other instrument and a property interest to which she is otherwise entitled (such as dower, a right in the decedent's es-

tate, or her interest under community property laws) of which adverse disposition was attempted by the decedent under the will or other instrument. If the surviving spouse elects to take against the will or other instrument, then the property interests offered thereunder are not considered as having 'passed from the decedent to his surviving spouse' and the dower or other property interest retained by her is considered as having so passed (if it otherwise so qualifies under this section). If the surviving spouse elects to take under the will or other instrument, then the dower or other property interest relinquished by her is not considered as having 'passed from the decedent to his surviving spouse' (irrespective of whether it otherwise comes within the definition stated in paragraph (a) of this section) and the interest taken under the will or other instrument is considered as having so passed (if it otherwise so qualifies). As to the valuation of the property interest taken under the will or other instrument, see paragraph (b) of Sec. 20.2056(b)–4."

6. 97 C.J.S. Wills § 1254 (1957).

7. Where the land is not susceptible of division without great injury this may be done under R.C.M.1947, § 91–2612.

testamentary disposition of the other half. Under Montana law this widow would inherit one-half of the property as to which the decedent died intestate. R.C.M.1947, § 91–403.

The court is not here determining the exact rights of the widow and has not mentioned some of the rights which the plaintiffs claim for her under the law of Montana, but it is indicating that as a widow and heir she has a bundle of rights which passed to her from her husband even if some of them were nothing more than rights to litigate substantial questions. While it is true that the marital deduction is normally fixed as of the date of death,[8] such is obviously not so where an election to renounce the will and take statutory rights is made. There is nothing in the law which gives the date of an election to renounce the same finality as the law gives to the date of death in the ordinary marital deduction case. If one post-death election may be made and have the effect of altering the marital deduction, it is difficult to see why other post-death happenings cannot alter the effect of the initial election. See Dougherty v. United States, 6 Cir. 1961, 292 F.2d 331. The agreement which was reached and which ultimately found its way into the decree of distribution can be regarded as a measurement of the rights passing to the widow by virtue of the law—the rights which are described in subdivisions 1, 2, and 3 of § 2056(e), Int.Rev. Code of 1954. Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410 (1938) lends support to this position. There, upon the compromise of a will contest, the court held that the property received by an heir was an inheritance, saying:

"There is no question that petitioner obtained that portion, upon the value

of which he is sought to be taxed, because of his standing as an heir and of his claim in that capacity. It does not seem to be questioned that if the contest had been fought to a finish and petitioner had succeeded, the property which he would have received would have been exempt under the federal act. Nor is it questioned that if in any appropriate proceeding, instituted by him as heir, he had recovered judgment for a part of the estate, that part would have been acquired by inheritance within the meaning of the act. We think that the distinction sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound, as it disregards the substance of the statutory exemption. It does so, because it disregards the heirship which underlay the compromise, the status which commanded that agreement and was recognized by it." Supra at p. 196, 59 S.Ct. at p. 159.

The case of Dougherty v. United States, supra, is persuasive here. There the district court[9] had held that certain property had not "passed" from the decedent to his surviving spouse. She had elected to take a dower interest which, in Kentucky, is normally a life estate. Under some circumstances, however, the dower may be reduced to a sum certain prior to distribution. As a result of a compromise the widow did receive a sum certain. The Court of Appeals reversed, saying:

" 'The basic principle * * * is that the spouse first to die shall be permitted to pass on to the surviving spouse free of estate tax up to one-half of his or her estate, provided only that the terms of the transfer are such

8. Jackson v. United States, 376 U.S. 503, 84 S.Ct. 869, 11 L.Ed.2d 871 (1964); Starrett v. Commissioner of Internal Revenue, 1 Cir. 1955, 223 F.2d 163; Commissioner of Internal Revenue v. Ellis' Estate, 3 Cir. 1958, 252 F.2d 109; Bookwalter v. Lamar, 8 Cir., 1963, 323 F.2d 664; Allen v. United States, 2 Cir. 1966,

359 F.2d 151, cert. den. 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966); Shedd's Estate v. Commissioner of Internal Revenue, 9 Cir. 1956, 237 F.2d 345, cert. den. 352 U.S. 1024, 77 S.Ct. 590, 1 L.Ed.2d 596 (1957).

9. 175 F.Supp. 339.

that this property will be taxable in the estate of the surviving spouse.' Estate of Pipe v. Commissioner, 23 T.C. 99, 104. Under this construction of the Act, we are more concerned with what the widow actually received in the settlement of her husband's estate than with what she was technically entitled to receive but actually did not receive. The transaction is materially different from an allotment of dower in the settlement of the estate and a subsequent sale by her of such allotment." Dougherty v. United States, supra, 292 F.2d at p. 337.

■ It is therefore the opinion of the court that the property received by the widow in this case through the decree of distribution was property which passed to her from her deceased husband and that the marital deduction should be calculated on the basis of the value of that property.

2. *Should the marital deduction be charged with a share of the Federal Estate Taxes?*

Defendant urges that since under R.C.M.1947, § 22–107 the widow's share of the personal estate is paid only after the payment of inheritance taxes, the marital deductions should be subject to a deduction for these taxes. Since the court has held that for marital deduction purposes the widow's rights in this case are not controlled by § 22–107, this argument fails.

Plaintiffs, citing Marans v. Newland, 143 Mont. 388, 390 P.2d 443 (1964) say that the Montana Supreme Court is receptive to the doctrine of apportionment and that the Montana Court would not subject the widow's share of the assets to the federal estate tax. On the basis of the present record, it appears that the court is not required to pass upon this contention. From that portion of the probate file which is in this record it seems that the federal estate taxes were paid out of the residue of the estate and that the widow received one-half of what was left. Since the court has de-

cided that the widow's allowance is measured by the "did gets" rather than the "would have gottens", the court is not inclined to determine how the tax might have been apportioned under some other circumstances.

If the court is in error in its assumption as to what happened with respect to the payment of estate taxes, plaintiffs are granted leave to reopen for the limited purpose of proving who did in fact bear the burden of the federal estate taxes.

3. *Did the widow's allowance qualify as a marital deduction?*

■ A widow's allowance in the amount of $6,000.00 was paid under an order of the court during the course of the administration of the estate. The defendant contends that a family allowance is, as of the date of death, a terminable interest and does not qualify for the marital deduction. The Montana statutes are almost identical with those providing for the widow's allowance in California. A widow's allowance under California law was held not to qualify for the marital deduction in Jackson v. United States, 376 U.S. 503, 84 S.Ct. 869, 11 L.Ed.2d 871 (1964). In Montana the allowance may be lost if the widow does not ask for it.[10] Under Shedd's Estate v. Commissioner of Internal Revenue, supra, this alone is sufficient to disqualify the allowance.

4. *Were certain accumulations to a trust includable in the gross estate?*

■ In April, 1959, Chris Jensen established an irrevocable trust for his grandchildren. Between that date and the date of his death the trust increased in value by the amount of $431.74. Defendant claims that this amount should be added to the gross estate, relying upon United States v. O'Malley, 383 U.S. 627, 86 S.Ct. 1123, 16 L.Ed.2d 145 (1966). In that case the trust instrument provided that the trustees, of whom the decedent was one, could accumulate

10. In re Trepp's Estate, 71 Mont. 154, 227 P. 1005 (1924).

the income of the trust, in which event it became a part of the principal of the trust. The court held that under § 811 (c) (1) (B) (ii) of the 1939 Code the retained power to accumulate constituted a right to designate, that this right did not expire until death, and that hence the accumulated income was transferred at death. Under the Jensen trust the trustees had the power to accumulate, but the decedent was not one of the trustees. When the trust was created, all of the decedent's rights to the property, including the right to future income and any rights to control the disposition of future income were lost to Jensen. This case is controlled by the rule announced in Commissioner of Internal Revenue v. Gidwitz' Estate, 7 Cir. 1952, 196 F.2d 813; Burns v. Commissioner of Internal Revenue, 5 Cir. 1949, 177 F.2d 739. In United States v. O'Malley, supra, the court refused to extend the rule of these cases, but there is no indication that that rule itself was repudiated.

This opinion together with the stipulation of the parties constitute the findings of fact and conclusions of law of the court.

It is therefore ordered that the estate taxes in the Estate of Chris Jensen be determined as follows:

1. That the marital deduction be computed on the basis of the interests actually distributed to the widow.

2. That the widow's allowance be disregarded in the computation of the federal estate taxes.

3. That the amount of $431.74, the accumulation to the trust, be excluded from the gross estate.

The parties are directed to compute the amount of the refund due to plaintiffs on the basis of this order, and report the result of their calculations to the court within thirty (30) days from the date this order is filed with the clerk. If they are unable to agree, they shall report their disagreement to the court within the same time.