**HAWAIIAN TRUST COMPANY, Ltd.,**
**Executor**

v.

**The UNITED STATES.**

**No. 167–65.**

United States Court of Claims.

July 16, 1969.

J. Russell Cades, Honolulu, Hawaii, for plaintiff, Seymour S. Mintz, Washington, D. C., attorney of record, Milton Cades, Richard L. Griffith, Smith, Wild, Beebe & Cades, Honolulu, Hawaii, and Hogan & Hartson, Washington, D. C., of counsel.

Knox Bemis, Washington, D. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant, Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Mastin G. White with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on October 1, 1968. Defendant took no exceptions to the commissioner's findings of fact but opposed adoption of his recommended conclusion of law. Plaintiff took no exception to the commissioner's findings of fact and urged adoption of his recom-

mended conclusion of law. The case has been submitted to the court on oral argument of counsel and the briefs of the parties.

The Government's position, as we see it, would substantially remove dower and dower rights from the marital deduction of the estate tax. That position broadly characterizes as "terminable" any dower right in which the widow has to survive for some period in order to elect, or to receive, the dower or commuted dower. So far as we have been made aware, most jurisdictions, perhaps almost all, require some election or some procedure by the widow before she can obtain her dower rights. Under the defendant's standard, all those interests would necessarily be "terminable" and outside the marital deduction since the widow might die before electing, making her claim, or following the prescribed procedure. Yet Congress evidently thought that dower rights would be an important component of the marital deduction. Section 2056(e) (3) of the 1954 Revenue Code expressly defines dower "or statutory interest in lieu thereof" as a property interest passing from the decedent. See also Senate Report No. 1013, Part 2, 80th Cong.2'd Sess., 1948–1 Cum.Bull. 331, 332–3, 334 (on the Revenue Act of 1948, establishing the marital deduction). True, Congress contemplated that some forms of dower (e. g. a life estate) would be "terminable" (1948–1 Cum.Bull. 331, 336, 337), but there is no indication that Congress considered that practically all dower rights would be eliminated from the marital deduction by the "terminable" provision. It is probably for that reason that the Government told the Supreme Court in its brief in Jackson v. United States, 376 U.S. 503, 84 S.Ct. 869, 11 L.Ed.2d 871 (1964), that "where under state law, a widow obtains a fixed right to claim a non-terminable interest at her husband's death, the mere procedural requirement that the widow signify her election or file her claim—which she might do immediately—does not make the interest meaningfully contingent. Her election to take the interest is therefore deemed

to relate back to the date of the decedent's death, and the marital deduction is permitted with respect to the property actually passing or vesting" (pp. 15–16). In the light of that concession, the Jackson opinion cannot be deemed as passing upon dower rights of the kind involved in the present case, i. e. a right to commuted dower which vests at the husband's death but as to which the wife must make an election or present a claim. We agree, moreover, with the Government's position before the Supreme Court, and add only that it is improbable that Congress intended to discriminate among the states on the basis of variable procedures in the making of the widow's election for her claim. Hawaii's method of admeasurement is simply its way of setting up and establishing the widow's election and claim.

Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same, together with the above, as the basis for its judgment in this case. Therefore, plaintiff is entitled to recover and judgment is entered for plaintiff with the amount of recovery to be determined pursuant to Rule 47(c).

## OPINION OF COMMISSIONER

WHITE, Commissioner:

The question to be decided in this case is whether the estate of James W. Glover, deceased, in connection with the estate tax paid pursuant to Section 2001 of the Internal Revenue Code of 1954, should have been allowed the marital deduction claimed by the estate under Section 2056(a) of the 1954 Code with respect to the sum of $272,529.39 which the estate paid to the decedent's widow as the commuted value of her dower interest in a large parcel of land.

It is my opinion that the question stated in the preceding paragraph should be answered in the affirmative, and that the plaintiff, as executor of the estate, is entitled to recover in the present action. The amount of the recovery, under an agreement which the

parties made with the approval of the commissioner, is to be determined in subsequent proceedings under Rule 47(c).

The decedent, a resident of Honolulu, Hawaii, died in Honolulu on March 1, 1957, leaving a wife and two children surviving him. At the time of his death, the decedent owned property that was later appraised as having a value in excess of $2,800,000, and he also had debts that were substantial in amount.

The decedent left a will, which set up a testamentary trust for the benefit of his two children but which did not make any provision for his widow. The widow, however, was entitled to dower under the law of Hawaii.[1] Section 319–1 of the Revised Laws of Hawaii, 1955, provided in part as follows:

> § 319–1. *Dower.* Every woman shall be endowed of one-third part of all the lands owned by her husband at any time during marriage, in fee simple, or in freehold, unless she is lawfully barred thereof. She shall also be entitled, by way of dower, to an absolute property in the one-third part of all his remaining property owned by him at the date of his death, after the payment of all his just debts.
> * * *

Among the property owned by the decedent at the time of his death was a large cattle ranch, known as the Kahuku Ranch, on the Island of Hawaii. Land owned by the decedent in fee simple and included in the ranch totaled approximately 158,000 acres. The livestock on the ranch consisted of 1,481 head of cattle for sale, a breeding herd of 840 head of cattle, and 8 horses, all of which were owned by the decedent.

The Kahuku Ranch was a single operating entity, with a road system, a water system, and ranching methods which required that all the usable land of the ranch be employed as an integral economic unit. For this reason, it would have been impractical—and, indeed,

would have seriously impaired the aggregate value of the ranch—if one-third of the land in the ranch (on the basis of value) had been set aside for separate operation by the widow during her lifetime, as an assignment of dower to her under Section 319–1, previously quoted. Also, any sale of the ranch for its full value would have been impossible unless the ranch were sold free and clear of the possibility that it might have to be divided in order to satisfy the widow's claim to dower.

On April 9, 1958, the present plaintiff, as the duly appointed executor of the decedent's estate, filed a petition in the Circuit Court, First Judicial Circuit, Territory (now State) of Hawaii, alleging that there was insufficient cash (or assets readily convertible into cash) in the estate to pay the estimated Federal estate and Hawaii taxes (which were estimated as being in excess of $600,000) and the other debts and administration expenses (which were estimated as approximating $1,000,000), and that a sale of the Kahuku Ranch was necessary for the purpose of securing funds to pay the taxes, debts, and administration expenses. The petition requested authority from the court for the sale of the ranch in order to secure funds with which to pay taxes, debts, and administration expenses.

The widow entered an appearance in the proceedings before the Circuit Court, and asked the court to authorize the sale of the Kahuku Ranch. She consented to the sale of the ranch, agreed to join in the deed of the property to the purchaser, and agreed to release her dower interest in the land, so that complete title could be vested in the purchaser. She did so, however, upon the express condition that the value of her dower interest in the land be admeasured in appropriate proceedings and paid to her, as provided by the law of Hawaii. In this connection, Section

---

1. If the decedent's will had made provision for the widow, she could nevertheless have elected to take her dower interest in lieu of taking under the will.

319-17 of the Revised Laws of Hawaii, 1955, provided as follows:

§ 319-17. *Standard of values; dower, curtesy, etc.* Whenever it becomes expedient or necessary to determine the value of any right of dower or curtesy or any other life estate or interest in any property, in any proceeding for partition or for the admeasurement of dower or curtesy, or wherein the value of any such estate is required to be provided for out of the proceeds of sale of the property subject thereto, the value thereof shall be determined by the rule, method and the standards of mortality and of value that are set forth in the standard annuity tables of mortality for ascertaining the value of policies of life insurance and annuities, using five per cent per annum as the rate of interest in connection therewith.

On June 4, 1958, the Circuit Court decided that the sale of the Kahuku Ranch was necessary in order to secure funds for the expenses of administration, family allowances, estate and inheritance taxes, and debts of the estate; and the court authorized the present plaintiff, as executor, to sell the property at private sale.

Thereafter, the plaintiff sold the Kahuku Ranch, including the realty and the personal property, for a total price of $1,363,630. After the sale was confirmed by the Circuit Court, the plaintiff conveyed the realty to the purchaser by deed. The widow joined in the deed, thereby remising, releasing, and quitclaiming all of her estate, right, title and interest in the ranch, by way of dower or otherwise, to the purchaser.

Subsequently, the widow filed in the Circuit Court a complaint against the present plaintiff for admeasurement of the value of her dower interest in the Kahuku Ranch land. On June 5, 1962, the Circuit Court determined that the portion of the sales price of the Kahuku Ranch allocable to the realty in which the widow had a dower right was $949,130; and that the widow was entitled to have paid to her, out of the sale price of the realty, an amount determined to be a fair equivalent for her dower interest in the realty. The court computed the value of the widow's dower in the proceeds of the sale by determining her life expectancy from her age on the date of the sale of the ranch. The value of her dower so computed was $272,529.39; and the court allowed the widow interest on this sum from the date of the sale of the ranch. The court's judgment, which was entered on June 5, 1962, required the present plaintiff to pay the widow the sum of $272,529.39, together with interest in the amount of $24,972.06.

In the Federal estate tax return that was originally filed on behalf of the decedent's estate, the plaintiff did not claim any marital deduction with respect to the widow's dower interest in the Kahuku Ranch land. However, the plaintiff later filed with the Internal Revenue Service a claim for refund which, *inter alia*, asserted that the decedent's estate should be allowed a marital deduction for the amount paid by the estate to the widow as commuted dower pursuant to the admeasurement proceedings in the Circuit Court (i. e., $272,529.39). This claim was denied by the Internal Revenue Service, and the administrative action was followed by the institution of the present litigation.

Subsection (a) of Section 2056 of the Internal Revenue Code of 1954 provides that, for the purposes of the Federal estate tax imposed by Section 2001, a "marital deduction" from the decedent's gross taxable estate is allowed in "an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse * * *."

However, limitations upon the scope of subsection (a) are prescribed by other subsections of Section 2056. Subsection (b), for example, excludes any "terminable" interest in property passing from the decedent to his surviving spouse, by stating that "Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an

interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest * * *."

The defendant apparently concedes in the present case that the widow's dower interest with which the court is concerned was an "interest in property which passes or has passed from the decedent to his surviving spouse" (with respect to this point, see Section 2056(e)(3) of the 1954 Code). On the other hand, the defendant contends that the widow's dower interest was a "terminable" interest and, therefore, did not provide a proper basis for a marital deduction.

In cases involving factual situations similar in all substantial respects to the one involved in this case, various Courts of Appeals have held that an amount paid to a widow by the estate of her deceased husband as the commuted value of her dower interest in realty qualifies for a marital deduction in connection with the payment of the estate tax. First National Exchange Bank of Roanoke v. United States, 335 F.2d 91 (4th Cir. 1964); United States v. Crosby, 257 F.2d 515 (5th Cir. 1958); United States v. Hiles, 318 F.2d 56 (5th Cir. 1963); Dougherty v. United States, 292 F.2d 331 (6th Cir. 1961); United States v. Traders National Bank of Kansas City, 248 F.2d 667 (8th Cir. 1957). No contrary court decision has been cited.

The defendant argues, however, that if a widow entitled to dower should die before the assignment to her of dower in kind or before the admeasurement of the financial equivalent of her dower interest, her estate after her death would not be entitled to anything from the estate of her deceased husband; and, therefore, that the possibility of the widow's death prior to the assignment or admeasurement of dower represents "the occurrence of an event or contingency" that would cause the dower interest to "terminate or fail." In this connection, the defendant cites the case of Jackson v. United States, 376 U.S. 503, 84 S.Ct. 869, 11 L.Ed.2d 871 (1964).

In the *Jackson* case, a state court in California, acting under the California Probate Code, had allowed the widow of a California decedent, pending the settlement of the husband's estate, the sum of $3,000 per month from the corpus of the estate for her support and maintenance, beginning as of the date of the husband's death and continuing for a period of 24 months from that date. A total of $72,000 was paid as the widow's allowance. On the Federal estate tax return, the $72,000 was claimed as a marital deduction, but the deduction was disallowed by the Internal Revenue Service, as was a claim for refund that was filed after the payment of a deficiency. The controversy ultimately reached the Supreme Court.

The Supreme Court held that the allowance made for the support of the widow during the settlement of her husband's estate was a "terminable" interest and, therefore, did not qualify for a marital deduction. In this connection, the Court said (376 U.S. at pp. 506–507, 84 S.Ct. 869) that in California a right to a widow's allowance is not a vested right and nothing accrues before the issuance of a court order granting it; that if a widow dies or remarries prior to securing an order for a widow's allowance, the right does not survive the death or remarriage; and, therefore, that as of the date of the husband's death, the allowance is subject to failure or termination "upon the occurrence of an event or contingency."

Basic to the Supreme Court's decision in the *Jackson* case was the view that the right to a widow's allowance during the settlement of her husband's estate was not a right that vested as of the time of the husband's death. By contrast, a widow's right to dower is one that does vest at the time of the husband's death. First National Exchange Bank of Roanoke v. United States, supra, 335 F.2d at page 94.

■■ The right to dower was developed under the common law (2 H.T. Tif-

fany, The Law of Real Property, § 487, page 339 (3rd ed. 1939)) [this treatise will be cited subsequently as "Tiffany"], and it is recognized by the American jurisdictions which follow the rules of the common law with respect to marital interests in real property. Until the death of the husband in such a jurisdiction, the wife has merely a contingent right or interest, known as "dower inchoate," in realty owned by the husband. 2 Tiffany, § 533, page 418. However, upon the husband's death, the dower right of the wife loses its contingent character and becomes "consummate." 2 Tiffany, § 534, page 424. It becomes effective at the moment of the husband's death, and is then a vested right. First National Exchange Bank of Roanoke v. United States, supra, 335 F.2d at page 93. It is not a property right at that time, but only a chose in action. United States v. Hiles, supra, 318 F.2d at page 60; 2 Tiffany, § 534, page 428. Dower does not become an interest in property until there has been an "assignment" of dower in kind to the widow. United States v. Crosby, supra, 257 F.2d at page 519; United States v. Hiles, supra, 318 F.2d at page 60; First National Exchange Bank of Roanoke v. United States, supra, 335 F.2d at page 93; 2 Tiffany, § 533, page 418, § 534, pages 424–425.

■ In the present case, there was no assignment of dower in kind to the widow. What she received was the right of dower, a vested right which passed to her and became effective at the moment of her husband's death and for which she was subsequently awarded by the Circuit Court—and was paid by the decedent's estate—the sum of $272,529.-39 as the commuted value of her dower interest in the Kahuku Ranch land. It was the right of dower for which money was awarded and paid to her in lieu of the right. This money belonged to the widow outright, her interest in it being absolute and non-terminable; and this equivalent of dower related back to the time of the husband's death and is to be regarded as an interest passing from him to the widow (United States v. Crosby, supra, 257 F.2d at page 519).

■ Allowing a marital deduction for commuted dower in this type of case is consistent with the purpose of the statutory provision authorizing the marital deduction, i. e., to equalize the incidence of the estate tax in community property and common law jurisdictions. United States v. Crosby, supra, 257 F.2d at page 518; Dougherty v. United States, supra, 292 F.2d at page 337; First National Exchange Bank of Roanoke v. United States, supra, 335 F.2d at page 94. In a jurisdiction where the community property system has been adopted, a surviving spouse is the outright owner of half of the community property, and this half is not included in the estate of the deceased spouse for estate tax purposes. Therefore, the Internal Revenue Code permits a surviving spouse in a common law jurisdiction to acquire, free of the estate tax, up to one-half of the adjusted gross estate of the deceased spouse.

The Supreme Court has said that the intent of Congress to afford a liberal "estate-splitting" possibility to married couples, where the deductible portion of a decedent's estate would ultimately, if not consumed, be taxable in the estate of the survivor, is unmistakable; and that the marital deduction provision of the Internal Revenue Code should not be construed so as to impose unwarranted restrictions upon the availability of the deduction. Northeastern Pennsylvania National Bank & Trust Co., Executor v. United States, 387 U.S. 213, 221, 87 S. Ct. 1573, 18 L.Ed.2d 726 (1967). Other courts have said, using positive phraseology, that the marital deduction provision should be liberally construed and applied in order to carry out and give effect to its purpose. United States v. Crosby, supra, 257 F.2d at page 518; Dougherty v. United States, supra, 292 F.2d at page 337.

■ It seems to be the purpose of the "terminable interest" limitation on the marital deduction to make sure that the marital deduction covers only those in-

terests passing from the deceased spouse to the surviving spouse which, if not consumed by the survivor, will constitute part of the survivor's estate at the time of death, will then be subject to taxation as such, and will not escape the estate tax a second time. Dougherty v. United States, *supra*, 292 F.2d at page 337. In the present case, the widow received from her husband's estate in the admeasurement proceedings the sum of $272,529.39 as the commuted value of her dower interest in the Kahuku Ranch land. This money belongs to the widow absolutely, and, if not consumed during her lifetime, it will be part of her estate at the time of her death. Hence, the rationale for the "terminable interest" limitation on the marital deduction is not applicable to the money which the widow received in this case.

For the reasons previously stated, it is my opinion that the estate of James W. Glover, deceased, should have been allowed the marital deduction claimed by the estate under Section 2056(a) of the Internal Revenue Code of 1954 with respect to the sum of $272,529.39 which the estate paid to the decedent's widow as the commuted value of her dower interest in the Kahuku Ranch land. Accordingly, the plaintiff, as the executor of the estate, is entitled to recover in the present action.